May it please the court, this appeal can and should be decided on the narrow issue of whether appellants named Apolli Berryhill in their EEOC charges of sexual discrimination for purposes of satisfying the notice requirements before filing suit under Title VII. Here, the record establishes that the EEOC served Berryhill with appellant's charges against Berryhill Baja Grill, which is a trade name that was used by Berryhill and Berryhill franchisees. The notices of charges were directed to Jeff Annen, Corporate Berryhill Headquarters, and the charges said that they had been filed against, quote, your organization. In the body of the charges, the appellants complained of the sexual harassment of Philip Wattel, quote, an owner, indicating a complaint about an owner in the franchise operations owned by Berryhill. This record establishes that Berryhill was named in the appellant's EEOC charges. The district court erred in finding that Berryhill was not named in those charges, and the district court's summary judgment on failure against the appellants for failure to exhaust administrative remedies should therefore be reversed for this reason alone and on this ground alone. No further inquiry is even necessary. But, if there are any questions about whether Berryhill was named in these charges, it actually sent a response to the court that it wanted to be removed as a, quote, party to the investigation and that Philip Wattel was the, was responsible for answering the allegations. In fact, the record shows that appellants had complained at least a year before in memorandum that were copied to Corporate Berryhill, the appellants, I'm sorry, the appellee. And so therefore, a year later, when Berryhill was served with the EEOC charges, the Executive Vice President and Director of Operations urged the CEO of Berryhill to do something about Mr. Wattel's conduct. She said the charges were, quote, bad, in all caps in an email, B-A-D, and that Mr. Wattel was, quote, toxic for Berryhill. In deposition, however, the CEO testified that he was only concerned about whether Mr. Wattel had clean stores and good employees and that he refused to respond and to do anything about Mr. Wattel's conduct. Berryhill declined to participate in the EEOC's investigation, even though it had notice of the charges. Counsel, let me ask you, these particular charges or the notice of charge of discrimination for these two, these two of them here, were drafted by counsel? No, Your Honor, they were not. They were drafted by whom? They were drafted by the appellants. They were not drafted by counsel. The counsel did represent them at the time, but the attorney for the appellants was not even present when one of the... But they were represented by a lawyer at the time? In a pro bono capacity, yes, but the lawyer did not draft the charges. Well, just because you don't get paid doesn't reduce your obligation, I don't think. But at all times, these plaintiffs were represented by a lawyer. Is that correct or not? They were represented by an attorney during the time that they filled out the EEOC charges. However, the attorney did not fill out the charges or draft them. We can assume for the moment that the district court is in an era in drawing this clean dichotomy between the standard here between uncounseled and counseled plaintiffs. We have to understand and write an opinion that articulates the standards that are to apply for in situations where a plaintiff is represented by counsel. Do you agree with that? Well, Your Honor, I think for purposes of this appeal, I believe that the appellant... I'm sorry, the appellee was actually named in the EEOC charges. Therefore, this court does not have to reach the issue of whether the identity of interest exception applies such that there's an analysis of whether the statutory purposes are met by virtue of an opportunity for reconciliation such that that decision does not have to be made if in fact... Well, we're presumably going to apply a more stringent standard at the least in situations where a person is not pro se but is represented by counsel. You're represented by counsel. So my question really goes to the question that when we articulate a higher standard, a more demanding standard where the lawyer is representing them, whether or not you meet that standard. And I think that's the problem in your case, whether or not that's so or not. I think it's what we have to decide. Well, Your Honor, in all of the cases where the circuit courts have recognized the exception to the naming requirement of Title VII, none of them have said that it only applies to pro se claimants. But has any one of them said that it does apply the opposite when the person was represented? Did you have a single circuit case that has applied the exception to the name party requirement? I don't believe it's been discussed. It's just whether or not the claimant was represented. And furthermore, the purpose of the exception is to make sure that the remedial purposes of the statute are met and balanced against the notice purposes such that the purpose of the exception is to make sure that form doesn't trump substance and that the remedial purposes of the statute and the claimant's rights to their remedies under Title VII are met and not thwarted by procedural requirements. Do you have a case that says what you said earlier, which is that the fact that the EEOC named them as a respondent can in any way reform the plaintiff's charges? Do you have any case that says that, that that accomplishes the naming? Well, Your Honor, if I understand the question, I do believe that if the, there are cases where they look at all the facts and circumstances, and when one of the facts and circumstances that the court considered were, you know, whether or not the, there was a trade name used and whether or not they were served, the charges were served on the counsel. So really it's a totality of the circumstances. But you don't have a case that has, that says that the fact that the EEOC names them accomplishes what the plaintiffs should, did not do? There, there, the cases look at the totality of the circumstances. Okay. And when you say, well, the totality, it would be like, for example, if they used a trade name, isn't it correct that these plaintiffs in their charges described only the address and the phone numbers for the Montrose location? In the charges themselves, the Montrose location was the location listed, but in the... So if they give a trade name that's comprehensive or uses the same names, but then the phone numbers and the address and every identifying feature relates to the franchisee, I don't see how that could be mistaken or understood by the corporate entity. Well, here, the charges, the notice of the charges, for example, were addressed to the CEO, Jeff Annen, corporate headquarters. And it said that the charges were filed against, quote, unquote, your organization. Those are, but are you slipping back to the EEOC or are you talking about the plaintiffs? Well, I, which is, what was presented, the point here is whether... Are you slipping back to the EEOC or is that the plaintiffs? Well, together, in the totality of the circumstances, the appellate, I'm sorry, the appellee here received the notices of the charges and it was directed to the organization. No one denies actual knowledge, but the test here is identicality of interests. If we get there. Well, Your Honor, but the point of the statute, again, the point of the notice requirement is so that the party has noticed and an opportunity for voluntary compliance. That was met here. It's not just whether they have noticed, unless you tell me you've got a case that says actual notice suffices. It's so that they were adequately represented even though they weren't named. That's the identicality of interests. Let me, so that's my statement. I think that's is just actual notice, not identicality of interests. There are cases that consider actual notice with all the other circumstances. With the other circumstances. Correct. Those being identicality of interests. Well, here, Your Honor, there was an identicality of interests. The assertion against this appellee is the fact that it was a single employer with a franchise. Do you have any identicality of interest case that says franchisor to franchisee identicality? Just that corporate arrangement. Well, there are certainly cases where other entities, separate entities, even more separate, frankly, than what we have here, were in fact held to have met the notice requirement. And here, really the point is that the purposes of the statute were met. And as this Court has said in Miller v. International Paper, with respect to procedural requirements of Title VII, the means devised cannot be more important than the end envisioned. And procedures are not to serve as stumbling blocks to statutory objectives. The appellee here was aware of the abuse that was going on at this franchise location. The appellee had previously been copied on memos. And that is, there's evidence of that in the record. Title VII's remedial statute is designed to protect employees from the unfairness and humiliation of discrimination. They had notice here. They were in a position to do something about it. The director of operations urged the CEO to do something about it. And the whole point of the operational standards and the manuals that we discussed in our briefing, which require the franchisees to follow certain employment requirements, and in fact the franchisor here, which is Barry Hill, the appellee, dictated the sexual harassment policy that was provided to the franchisees. All of that was so that the franchise organization would have a uniform and in fact appropriate standards including being free from sexual harassment. So certainly the interests here were identical. That was the whole point of requiring the franchisees to follow the policy. Even if I weren't persuaded by that assembly of facts, is it correct that the district court here stopped the entire analysis by saying, represented, you never can get to the exception? That is. So your threshold argument would be, error there, send it back whatever we might think from the record. Is that correct? Well, our threshold argument is actually that there was actual notice in the EEOC charges. So therefore, the identity of interest exception, we don't even need to address that. Okay. And your best case for that is what? One case. I would say the... Actual notice from the EEOC charges. I would say that is the Manzi case, which I believe is cited in our brief. Okay. I don't know about all, I can give you the exact citation, but it's cited in our brief as a Manzi case. And then your next level position is, Judge Atlas just stopped it by saying, if you're represented, you could never take it, you never can receive the advantage of the exception.    represented, you could never take it, you never can receive the advantage of the exception. Correct? That is correct. And actually, Judge Atlas overlooked the Honorable Keith Ellison's precedent in the Southern District of Texas, where he rejected that attorney exception to the exception, the representation of the attorney. Then the rest becomes how one looks at the whole constellation of facts. That's exactly right. We would certainly submit, Your Honor, that that should be decided by the jury, as it's certainly a fact-intensive inquiry as to whether there was a clear identity of interest.        District of Texas, where he rejected that attorney exception to the exception, the representation of the attorney, as it's certainly a fact-intensive inquiry as to whether there was a clear identity  So, I think it's very important that we have a brief review in the first instance. That certainly is something that the district court, under the Romero case, which I believe is a Tenth Circuit case, it says that the identity of interest is a test that should be, it's a fact-based test that should be decided by the fact finder here, the jury. And in fact, there is evidence in the record that when Mr. Annem, which is the CEO of Berryhill, received complaints about Mr. Wattel's driving his Hummer too fast or noises at the restaurant, that he would call Mr. Wattel and ask him to please correct the problem. There are certainly instances in the record where employees went back and forth between corporate Berryhill and Berryhill Montrose. There are certainly indicia in this record and in facts in this record of shared employees and there is certainly indicia in this record and facts in this record of Mr. Annem, the CEO of Berryhill, exercising control over Mr. Wattel. And it should be for the jury to decide whether Mr. Annem should have exercised control over the employment operations and the sexual harassment charges that were made at the Berryhill Montrose location. Is the requirement of notice jurisdictional? No, Your Honor, it is not. It is not jurisdictional. As a matter of fact, it's something that can be waived. The Greenwood v. Ross case out of the Eighth Circuit speaks to this. And certainly here, when Berryhill wrote back to the EEOC and said they did not want to participate in the proceedings, they wanted to be removed as a party, that was waiver. It is not jurisdictional. Was Mr. Wattel's behavior sufficient to result in termination of the franchise by Berryhill Corp.? The CEO testified in deposition that he could terminate the franchise agreement for any violations of the law. And so, yes, this was a violation of the law and yes, it could be terminated for this reason. By allegation alone or would there have to be a finding? Well, I mean, we do now have a finding that it was from the district court below that there was severe and pervasive sexual harassment of these appellants. And has the franchise been terminated? No, Your Honor, it has not. All right. Thank you. You saved some time for rebuttal. Thank you. Ms. McElroy? May it please the Court? My name is Megan McElroy and I'm here today representing Berryhill Hot Tamales Corporation, which has also been referred to as Corporate Berryhill or we refer to it as BHT, which is the appellee in this case. BHT respectfully requests that this court affirm the district court's grant of summary judgment for BHT on appellant's Title VII claims on two separate legal grounds. First, because the appellants failed to exhaust their administrative remedies against BHT. And second, even assuming that they did exhaust their administrative remedies, which BHT denies, appellants still cannot create a genuine issue of material fact on the fact that BHT and Zimbocki constituted either a single employer or joint employer during the time period relevant to appellant's claims, Title VII claims, which is necessary in this case to hold BHT liable for their Title VII claims. Does the evidence contain Waddell's girlfriend, Troger's, communication to EEOC on behalf of the corporation that Montrose was a, quote, corporate store? No. The letter that Ms. Troger sent. Not the letter. Wasn't there a phone call and there was testimony relating to the contents of a phone call before the letter? There was a phone call to the EEOC with regards to Ms. Kulig's charge. And so with Ms. Kulig's charge, she called the EEOC and said, again, the same thing that she said in the letter, that this was a charge not against Corporate Berryhill, but against its independent franchisee. So you're quite confident when you describe that call that she didn't say it's a corporate store? I'm quite confident. The record shows that she said that it was a, it was a franchisee. 100% owned, okay. And so with regards to the second separate issue of us being a single employer, as an alternative grounds on which this court can uphold a summary judgment that was granted for Corporate Berryhill, this case is about two former employees of an independently owned and operated franchisee who seek to hold the franchisor liable with the franchisee for the franchisee's alleged Title VII violations. The district court, Judge Atlas, decided that the appellants could not maintain their Title VII claims against BHT because they failed to exhaust their administrative remedies. And she reached this decision by first determining that they did not name Corporate Berryhill in their charges. She also then determined that because they didn't name them in their charges, you have to rely on the identity of interest exception. And she said that appellants cannot get to that exception because they were represented by counsel at the time they filed their EEOC charges. She didn't make an independent finding that even if the exception's available to a represented party, I conclude there's no genuine dispute of fact, correct? That's correct. She did not reach. So your position, whether you win ultimately or not, lives or dies on that proposition legally? With the district court, but this court has the ability to affirm the summary judgment on alternate grounds and the record was fully briefed before the district court and it's been fully briefed before this court of all of the alternative bases on which this court can grant summary judgment, even if you were to find that appellants can avail themselves of the identity of interest exception. And opposing counsel points out there's no discussion of Judge Ellison's viewpoint, which is opposite to Judge Atlas's conclusion. And that's correct. In Judge Atlas's decision, she did not discuss Judge Ellison's opinion. However, she did cite to the courts in Louisiana that have said that the identity of interest exception does not apply when counsel is represented. But that's a magistrate. That's Judge Brady in the Middle District? But there's no discussion in his ruling and it's Judge Wilkinson, Judge Magistrate Wilkinson's opinion here and trace that back because the only authority I remember he cites is the Louisiana District of New York opinion. When you go further and further back on that little line of authority, I don't see where it's defended in a rational way. Why would the fact that counsel or not counsel create a different body of substantive law as distinct from liberality of pleadings? Well, the exception itself was created because of the concept that most of the time charging parties are pro se when they file their charges. And so you have to afford them some leniency when they draft their charges because they don't necessarily understand the technical and pleading requirements of Title VII. But that's precisely the reason why someone seeks legal counsel in the first place. If someone doesn't understand the law or want someone to be their champion of the law, they seek legal counsel. And it's incumbent on that legal counsel to read the statute, to read the regulations, to make sure they're complying with the law. But in what other context have we ever created a separate substantive law that pro se individuals have the benefit of but represented parties don't? What other context can you think of? I'm not aware of another context, but I think it's important to understand the reason why these exceptions were created in the first place. They were created because of the idea that these are oftentimes pro se individuals who are creating these charges. So you have to look at the reason why the exception was ever created in the first place. And I think that is a basis for which this court can craft a rule that holds legal counsel to a higher standard. And it's not a higher standard in the sense of they're having to go above and beyond what the law requires. It's holding them to the law. We do that with prisoner litigation. We give a rule of liberality of pleading to pro se prisoners and we don't give them that and they're represented by counsel. And I think that a rule of that makes sense in this case. If someone is represented by counsel, they're relying on that counsel to ensure that they follow the legal requirements, the technical pleading requirements. In Texas and in Louisiana, you have 300 days to file your charge. In Mississippi, you have 180 days. What's your position if you have a position to counter appellant's representation today that the lawyer did not draft the charges, was not present when the charges were drafted? I don't think that that should matter. They have been represented by counsel long before they filed their charges. Their counsel should have, if they were going to file the charges, the counsel should have advised them you should file your charge against corporate Berryhill separately. You should file your charge against Berryhill Mantra separately. If they intended to file a lawsuit against both of these entities, it was incumbent on the charging party and their counsel who was advising them to file charges against both At the EEOC intake questionnaire, there's a space to list two different employers. They only listed one in this case. They only listed Berryhill Mantras with the Berryhill Mantras address. They could have listed right under there for the second employer, corporate Berryhill. They did not do that. They didn't even need to file a second charge. They could have encompassed it in their one charge. They didn't do that. I think the fact that they were represented by counsel, but the fact that counsel might not have been present when they filed their charges shouldn't make a difference in terms of application of the rule in this case. Going back to, even before you even get to the rule, you have to first look at whether or not they were named in the charge. Of course, appellants argue that they did name corporate Berryhill in their charges. If you look at the charge itself, it is evident that corporate Berryhill was not named in that charge. It is true that the charge uses the trade name. As Judge Higginson pointed out, that's the trade name for all of the franchises, both So any ambiguity that might exist as to did they name corporate Berryhill or did they name Montrose, you look at the address and you look at the body of the charge. So what do you think, what do you ask this court to do? I'm asking this court to adopt a rule that says, well, I'm asking the court to affirm the district court's decision. But what do you want us to say in that? I think that the rule should be that if someone is represented by counsel at the time that they file their EEC charge, they have to follow the requirements of Title VII that Congress put in place. Congress requires that you name the party in your charge in order for you to later sue them in a lawsuit. And if that's the case, if you are represented by counsel, then you cannot avail yourselves of these equitable exceptions that courts have created to protect pro se plaintiffs. Yeah, but pro se, I mean, pro se plaintiffs have to name the party too. The liberality of pleading that I understand, even as to prisoners, would be, as you described, 364 days versus 365 mailbox rules or address error. But here, it's an entire substantive doctrine that even courts are wrestling over as to what its elements are. So we're going to start treating parties differently as to substantive doctrine, depending on whether they have, in this case it was pro bono counsel, right, as distinct from a pro se litigant. That's going to be a hard rule to write. I don't think that it's a hard rule to write. I think the rule is that legal counsel have to follow the requirements that the statute that Congress has put in place for the statute and that the EEOC has promulgated in its regulations. The rule is that legal counsel should read the statute, read the regulations, talk to their clients about who is your employee. Congress said everybody's got to do that. Right, everyone does have to do that. Pro se or not. Pro se or not. They are held to that. They're held to Twombly. They're held to all the same standards in that regard. And they are. And the reason that courts have created the judicial, these judicially crafted exceptions was just to protect plaintiffs to essentially so there's not, the plaintiff is not left without any relief. No one to sue. Well, isn't there a distinction if you're represented by pro se counsel and the pro se litigants are the ones drafting the pleadings, the charges, as opposed to, if the representation was accurate, as opposed to not having the lawyer represent, not having the lawyer draft the charges and letting the litigants draft the charges. Isn't there sort of a problem there? And maybe I'm not understanding your question, Your Honor. I apologize. Well, if you're represented by counsel, you would think the counsel would draft the complaint, draft the pleadings, draft the charge. But in this instance, counsel for the claimants has said that they drafted the charges. And I don't know. Hence the confusion. And I understand, and I understand Your Honor's point that it seems that the counsel would go with them and draft the charge, but that may not necessarily be so because it should, the charge itself, drafting the charge, it's not like drafting a lawsuit. It's a pretty simple questionnaire that you fill out. Who is your employee? You have to name the right parties. That's why we're here, right? Right. You have to name the right parties. And their counsel could have easily told them, here are the correct parties. Even right before the conciliation efforts were to take place, the appellant's counsel sent an email to the EEOC saying their preference that the EEOC bring a lawsuit against Montrose and Corporate Berryhill. But despite that, they never named us in the charge. They never, neither they nor the EEOC nor Symbachy ever gave BHT notice that these conciliation efforts were even going on. So, I mean, even if you were inclined to say that the fact that they're represented by counsel shouldn't be a bar to applying the equitable exceptions, the exception in this case still should not apply because there was no identity of interest. And we've, you're, the Fifth Circuit's adopted. Do you think there's a pretty clear statement of ours as to what our circuit perceives to be the test? Yes. In Harts v. Administrators of Tulane Educational Fund, this court. And that's cited in your brief? That is cited in my brief, yes, Your Honor. This court adopted the Third Circuit's four-factor GLUST test for the identity of interest. That's, okay. So you're saying even if we do reach it, that's articulated, okay. What's the best case that stands for the proposition, the best discussion of the proposition that will treat lawyered parties differently? Is it, is it the fast bender? I do believe. The magistrate decision? Yes, Your Honor. Okay. And if you look at the, the number of courts, and you are correct that there are a lot of courts in, in New York and the New York District Courts have, have applied this exception, but more courts that have, have looked at the issue of whether or not you're represented by counsel should be a bar to the exception, more courts have found that it should be a bar than courts that have found the opposite in saying it shouldn't be a bar. Now, it is true that no district, no, I'm sorry, no court of appeals has, has issued an opinion on this, which makes it a matter of first impression for this court, but the overwhelming district courts that have looked at this. You say the overwhelming have done that. Which single one has discussed the logic behind it in the fullest extent? I would believe it is the fast bender case. And, and the logic is the fact that the, the leniency that these, the exception in the first place is meant to protect pro se complainants in the first place. So that leniency should not be afforded to counsel. Well, let me go back to the, the fundamental defect here on the filing of this complaint was asserted to be a failure to abide the congressional directive that a plaintiff here must first exhaust their administrative remedies with the administrative agencies. Correct? Yes. On the filing of that complaint, that's, this is a threshold matter to reaching the, a prerequisite to reaching the merits of that complaint. Correct? That is correct. The, do you agree with counsel opposite that, that then presents a jury question? That is that you would have to go forward and, and force the individual to try the case out to the conclusion before you determine whether or not the case should have been faulted at the outset because of want of exhaustion. More precisely, and what in your view is the appropriate procedural mechanism for No, Your Honor. It's not a jury question. It's only a jury question if they've created a material. I understand that. Uh, that answers part of it. How would you do that on a motion to dismiss but wait for you to exhaust? Correct? It, it, oftentimes these cases, Is it summary judgment or how? It is summary judgment. Some, and I think one of the, one of your judges asked if it was a jur, I think Judge Higginbotham, you asked if it was a jurisdictional requirement. The notice was a jurisdictional requirement. Unfortunately, the courts have not been 100% clear. There, there have been some courts that have said exhaustion is jurisdictional. There have been other courts that have said it's not jurisdictional. Well, jurisdiction is an elusive concept. Right. So some courts have, have dismissed these claims on, you know, 12B1 motions for lack of subject matter jurisdiction, on 12B6 motions, or on summary judgment. I think that you can either use a 12B6 or a summary judgment. So that's, that's, that's precisely the reason for the jurisdictional inquiry is the procedural mechanism for resolution. That's a threshold where you can resolve those questions of fact at the outset. And that's what's critical in these cases so that you don't have a defendant who has never really had, afforded the opportunity to, to, or he's, it's assert has never been afforded the opportunity for reconciliation to make that, to have that determination made before they're put to trial. And the characterization of jurisdiction, it seems to me, of not, should not be outcome determinative as whether that can be resolved under, under the, under Rule 12 itself. Provisions allowing for treatments of jurisdictional flaws, prerequisites, if you will, to go forward. That, that to me, that bears in part on this question of, of what ought to obtain here. You, many of these cases, you have the pro se litigants filing the notice, filing the complaint later. What do we, so I, we apply a relaxed rule of liberality with a notice, but then tighten the screws when the lawyer is trying to file a complaint? The mistake's already been made. That is, the looseness, the lack of clarity. The form is simple, but if you start dealing with franchise, franchisees, you got intermixed with the trade names and so forth, a pro se litigant doesn't know what, A from B, perhaps, or not clearly, and so they fill out the form when uncounseled. Then they get a lawyer. I mean, that's, that's my experience in the real world. What, what, what, what do we do? Two different tests? Do we cut in a sharp rule after the pro se litigants got themselves in the suit? Well, I think the test should be, if they have counseled the entire time from when they filed the charge, and they aren't given that leniency, and they are held to the standard that they have to follow the rule. They have to follow what Congress required with Title VII, and the purpose of that, you have to understand. But these people had a, they had a lawyer at the time the charge was filed with the AOC. That is correct. So we don't have that problem. That's correct. And, and I think it's also to, to get to the other issue that we briefed in our, with my, my time remaining, the other issue that we briefed in our, in our brief is that even assuming this court found that they did exhaust their administrative remedies, either that they named them in the charge, they can avail themselves of the exception, and that the exception applies. There's still another basis on which this court can, this court can uphold a summary judgment, which is finding that we were not a single employer. And this court in Trevino v. Solanes has set the standard for what makes two companies an integrated enterprise. And there is absolutely no evidence in the record showing that Berryhill exercised more control than what would be normal in the franchisor-franchisee context. And I think that's important because this case, if Berryhill could be held liable for the franchisee's conduct, I really think that it will have very severe ramifications for the franchise industry as a whole. It would disincentivize franchisors from engaging in franchises if they know, given the, the control that exists in this case, which is very minimal and designed to maintain the brand, that they could then be held liable for their franchisee's Title VII violations. There would be no incentive to have a franchise if you're on the hook, despite having a very hands-off approach to your franchises. And I think that's important to keep in mind in this case. As this court said in Lust v. Foxmeyer, which where they, they discussed the single employer test in the context of a parent and subsidiary, that the question is, did the parent actually exercise a degree of control beyond that found typical in the parent-subsidiary relationship? So if you put that in this case, did corporate Berryhill actually exercise control beyond that that is normal in the franchisor-franchisee relationship? And the answer is no. There's just no evidence of that in this case. And so it would be just manifestly unfair, and in direct contradiction of the law in this, in, in this circuit as well as in other circuits, that Berryhill could be held liable as a single employer. And the other circuits that have addressed this issue are, the Tim circuit has addressed it in a case, Evans v. McDonald's Corp. And in that case, there was a lot more evidence of control by the franchisor than exists in this case. So, Your Honors, for the, for the reasons discussed today, BHT respectfully requests that this court uphold the district court's grant of summary judgment, either on the grounds that the district court decided or on the alternative grounds that are discussed in our motion, I'm sorry, in our, our brief. Thank you. Ms. Strahan. Thank you. I would like to address first, just with respect to the charges that were filed and served on Berryhill. In fact, counsel, the theory here was joint enterprise or single employer. And counsel is the one, as pointed out by the email attached in the record excerpts that had urged the EEOC to, in fact, serve Berryhill. And, in fact, they were served with notices of the charges. So, to the extent that there was actual notice here to Berryhill, that is, according to the suggestions by the appellee, the result of, of counsel's urging. So, in fact, the theory being single employer, it makes sense that the charges were named under the trade name and then, in fact, served on corporate Berryhill. With respect to the purpose of the identity of interest exception or any exception to the naming requirement under Title VII, the purpose is so that the purposes of the statute, when they are, in fact, met, are not defeated by procedural hang-ups. And here, the courts have articulated repeatedly that those purposes are notice and an opportunity for voluntary compliance. Why don't we have an approach that simply doesn't deal with counsel and uncounseled differences at the notice stage? The question is simply whether there has been exhaustion. And then we ask that question whether there has been exhaustion or not. Then, when a complaint is filed by counsel, we apply the, you've got a lawyer, you don't have, it's a pro se litigant coming into federal court. We, you have a certain liberality of pleading that, that is obtained. Then you don't, you simply just provide that, the question is, is it exhausted or not? If you're a pro se litigant or if you're another, you're either exhausted or you're not. The real question is whether or not the defendant meaningfully had the opportunity to participate in that process. If it exhausted, it doesn't really, and what we're trying to do is answer whether or not they exhausted based on notice to them or whatever. If they had notice, if you just hang it just on notice, then, then you mean that would be sufficient as long as they were, it was clear that when I noticed that you are required to participate in the exhausted thing or not? Your Honor, the letter back to the EEOC by Berryhill said they asked to be removed as a party to the investigation and that Philip Whittell was responsible for responding to the allegations. So, I mean, certainly their use of the word party is significant here. They understood that they were a party to this investigation. Nothing prevented them from trying to, to ask the EEOC if they had any questions about the scope of the investigation or to even try to, to settle or have a, you know, settlement discussions with these appellants. They certainly knew that there were complaints and the charges were directed to, quote, your organization. So if a corporation receives a copy of a, of a complaint filed by an individual against a, a subsidiary corporation or whatever just through the copy of it and the, and the, and the subsidiary is the one that's named, they're not named at all. That means that they've got, that they've been named? Well, Your Honor, this was addressed to Corporate Berryhill and it was, the charges, the notice of the charges said there's been a complaint filed against, quote, unquote, your organization. What, what? They asked to be removed as a party. What, what was the actual note? That is our record excerpt six. Your organization referred to the franchisee, right? Well, it was addressed, it was addressed, I'm sorry, the, the notice of charges were directed to Mr. Annen at Corporate Berryhill headquarters. And that said, charges have been filed against your organization. But I would also like to add in just my last few seconds remaining that the, the allegation here that the, that there should be, that the only involvement here by Corporate Berryhill is to protect the brand. And that is the only purpose of the franchise or its arrangement with the franchisees in terms of the operation manuals and requiring with laws. It is certainly significant to the brand that there was a poster in the bar area of this restaurant for months that said sexual harassment will not be reported, reported, but it will be graded. That is certainly an interest, an identity of interest to protect that brand. And therefore, this, the jury should decide whether or not this entity was. Let me ask you a question. If you look at this, the form, it's addressed to Jeff Annen or whatever, Human Resources Legal Department, Berryhill Corp, person filing charge, Laura Batts. And then it says here, enclosed is a copy of the charge of discrimination. Now, what is the charge of discrimination? I don't, I don't have that here. The charge of discrimination, I believe it's, I believe it's also in our record. Well, it probably is. I just don't have it here. I just, I don't have it in my head. What did it say? Well, it was addressed to Berryhill Baja Grill. It was identified as the employer, and that is a trade name used by, it's admitted that that's a trade name used by the Apple League. So, the, this, what I'm suggesting to you, at least as I look at it, this form is nothing but a notice to them that a, that a Mrs. Batts has filed a charge. And the charge of discrimination, it doesn't say against them. It just says, that's an, that is an enclosed, a copy of the charge. So, I assume I, if I looked at the charge of discrimination, it would be, I would know if I were the, the franchisee or that I'm being charged. Well, it says that it complains of the conduct of Philip Wattel, quote, owner. What, what says that? The charge, the charge complaint. Well, that's the charge, but not this, not this form. I'm sorry, I thought you were asking me about the charge, Your Honor. Well, no, I didn't ask you about both, but I'm, what I'm saying to you is that I'm looking at the form, and the form says that, and I've just gone through it, that this is a, just to, to the resources, but it says a person is filing a charge, but it also says that it enclosed a copy of a charge of discrimination. Now, on the face of this, you know, I looked at the charge, and it's the franchisee that's the object of the charge. So, I mean, so I'm a franchisor, and the response to this was, was accept this letter as an official response to the charge against Wattel. Wattel is not an owner or operator. He is the franchisee of Montrose location, so we're, so what you have is a notice, if you will, of a charge to the franchisor, and you have a response by the, by them that says, hey, that ain't us, that's the franchisee. Now, how does that, then you end up saying that having done that, that they nonetheless exhausted their remedies, and now they're subject to civil suit? Well, Your Honor, the attached charges did complain of the conduct of Philip Wattel, owner, and it had owner, and the allegation here is single employer. This is one of the owners in the franchise operation. The corporate burial had been previously copied on memorandum that had been prepared by the appellants here and they were complaining about the sexual harassment. They were aware of what was going on, and this executive vice president even urged the CEO to do something about this. They knew this was a problem for them. On that response, is the executive vice president, Ms. Troger, is that the same woman who was both his girlfriend but alleged abuse against her? That is correct, Your Honor. That's one and the same? Yes. So the corporate person responding to EOC is also Wattel's former girlfriend? That is correct, Your Honor. Okay, and that's just a bit odd. But to the extent that it's relevant legally, you heard me ask opposing counsel, didn't that lady in her first phone reference describe the Montrose store as a corporate store or am I just wrong on that? Your Honor, I'd have to go back and look at the record on that. The letter completely denies it. Okay, that's fine. I'll check that. And I can send a letter on the record reference to that. Okay, I'm sorry. I'm a little late coming with my questions, but thank you. All right, thank you. All right, thank you.